UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
MARIN OPREA,                                           :
                                                       :
                              Plaintiff,               :
                                                       :         15-CV-5171 (VSB)
              -against-                                :
                                                       :         **OPINION & ORDER**
DETECTIVE LAWRENCE WHITE,                              :
                                                       :
                              Defendant.               :
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/2018

Appearances:

Malcolm Alastair Anderson
Duncan Archie Peterson
Peterson Delle Cave LLP
New York, New York
*Counsel for Plaintiff*

Noreen Stackhouse
Paul Hasan Johnson
Nicholas Daniel Manningham
*for* Zachary W. Carter
Corporation Counsel for the City of New York
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff brought this action pursuant to 42 U.S.C. § 1983 against Defendant Detective Lawrence White alleging claims of false arrest and malicious prosecution. Defendant moves for summary judgment under Federal Rule of Civil Procedure 56 on the grounds that Plaintiff's claims fail as a matter of law and Detective White is entitled to qualified immunity. Because I find that Detective White had arguable probable cause to arrest Plaintiff for harassment in the second degree, Defendant's motion for summary judgment is GRANTED, and the case is dismissed.

I.      **Background**

Plaintiff, originally from Romania, was arrested in connection with a series of protests he participated in between September and December 2013 outside the home of John Paulson, an investor in a Romanian mining operation. (Def.'s SOF ¶¶ 3–4; Oprea Dep. 28:21-24.)[1] According to Plaintiff, the protests were in opposition to the mining operations and to show Paulson and his associates were "doing a bad thing in Romania." (Def.'s SOF ¶ 10; Oprea Dep. 31:9-11.)

Detective White, an investigator with the Manhattan District Attorney's Office Detective Squad, (Def.'s SOF ¶ 36; White Dep. 19:6-14, 27:2-10),[2] first learned about Plaintiff's activities from Assistant District Attorney Ryan Hayward, (Def.'s SOF ¶ 38; White Dep. 40:24-41:5). ADA Hayward told Detective White that Plaintiff had crossed onto Paulson's property after being warned by security not to cross the property line, and delivered a letter containing comments that made Paulson fear for the safety of his family. (Def.'s SOF ¶ 39.)

Detective White contacted the security guard who worked for Paulson, Patrick Hall. (Def.'s SOF ¶ 40; White Dep. 42:16-21.) Hall told Detective White that, on September 29, 2013, he saw Plaintiff with twelve to fifteen other people, standing on the sidewalk in front of Paulson's residence holding signs and chanting, (Def.'s SOF ¶ 41; Crim. Compl. 2),[3] and that another member of the security team told Plaintiff where the property line was and instructed

---

[1] "Def.'s SOF" refers to Defendant's Statement Pursuant to Rule 56.1. (Doc. 30.) Unless otherwise noted, Plaintiff's Statement Pursuant to Rule 56.1 filed in response does not contest the facts listed in Defendant's Statement. (*See* Doc. 34-1.) "Oprea Dep." refers to the transcript of Plaintiff's deposition annexed as Exhibit C to the Declaration of Noreen Stackhouse. (Doc. 31-3.)

[2] "White Dep." refers to the transcript of Defendant's deposition annexed as Exhibit D to the Declaration of Noreen Stackhouse. (Doc. 31-4.)

[3] "Crim. Compl." refers to the New York County Criminal Court Complaint pertaining to plaintiff's March 20, 2014 arrest, annexed as Exhibit H to the Declaration of Noreen Stackhouse. (Doc. 31-8.)

2

him not to come onto the property, (Def.'s SOF ¶ 42; Crim. Compl. 2). Hall also told Detective White that, on October 20, 2013, another group of about fifteen protesters were in front of the residence, and on that occasion, Plaintiff said that he and the other protesters would leave and not return if Hall would provide them with the name and address of a business associate of Paulson. (Def.'s SOF ¶ 43; Crim. Compl. 2.) Hall also told Detective White that he saw Plaintiff at the residence again on November 10, 2013, and Hall again told him that the stairs were private property and that Plaintiff was not permitted to come onto the private property. (Def.'s SOF ¶ 44; Crim. Compl. 2.)

Hall reported that, on December 1, 2013, he saw Plaintiff approach the mail slot and push an envelope through. (Def.'s SOF ¶ 45; Crim. Compl. 2.) This was in spite of the fact that Hall had told Plaintiff not to put anything through the mail slot. (Def.'s SOF ¶ 46; Crim. Compl. 2.) Hall told Detective White that he tried to physically prevent Plaintiff from putting anything through the slot but was unsuccessful. (Def.'s SOF ¶ 47; Crim. Compl. 2.) Hall then told Detective White that he retrieved and read the letter that Plaintiff had put through the mail slot, and indicated that the letter mentioned Paulson's "beautiful young daughters" and Paulson's wife by name; Hall indicated to Detective White that the letter caused Paulson to fear for the safety of his family. (Def.'s SOF ¶ 49; White Dep. 70:16-71:10.)

Hall said that he also observed video surveillance of Plaintiff hanging a bag of food items on a doorknob of the property on December 15, 2013. (Def.'s SOF ¶ 51; Crim. Compl. 3.) He told Detective White that he saw Plaintiff "on multiple dates between September 29, 2013 and December 8, 2013," and that on occasion he saw Plaintiff in a group of protesters where one of the protesters was holding a sign that read "PAULSON DIGEST OUR CYANIDE." (Def.'s SOF ¶ 50; Crim. Compl. 3.)

3

During the investigation, Detective White did not see a copy of the letter allegedly delivered by Plaintiff because ADA Hayward told him it was not necessary. (Def.'s SOF ¶ 52; White Dep. 47:5-9, 71:19-72:2.) He did not view the available surveillance footage. Nor did he request to speak directly with Paulson personally.

After speaking with Hall, Detective White performed background checks on Plaintiff and identified a phone number belonging to him. (Def.'s SOF ¶¶ 53–54; White Dep. 43:18-22, 44:15-18.) Detective White then called Plaintiff on the phone, told him he would be arrested, and explained that he could surrender voluntarily. (Def.'s SOF ¶¶ 55–56; White Dep. 44:15-22, 45:10-25.) Plaintiff voluntarily surrendered himself and, on March 20, 2014, was arrested and charged with Aggravated Harassment in the Second Degree, Stalking in the Fourth Degree, Trespass, and Harassment in the Second Degree. (Def.'s SOF ¶¶ 57–63; White Dep. 52:18-53:7; Crim. Compl.) The criminal complaint was prepared jointly by Detective White and ADA Hayward; ADA Hayward decided which charges to put on the complaint. (Def.'s SOF ¶¶ 64–65; White Dep. 52:4-17, 65:18-66:7.) At Plaintiff's arraignment, the Court issued a 6-month Order of Protection prohibiting Plaintiff from contacting Paulson. (Def.'s SOF ¶ 66; Stackhouse Decl. Ex. I.)[4] The criminal complaint was ultimately dismissed on March 12, 2015 for Speedy Trial reasons. (Def.'s SOF ¶ 67; Stackhouse Decl. Ex. L.)

## II. Procedural History

Plaintiff initiated this action by filing a complaint against Defendants Detective White and the City of New York on July 2, 2015. (Doc. 1.) The parties stipulated to the dismissal of the City of New York. (Doc. 28.) After discovery was complete, Defendant White moved for summary judgment. (Doc. 29.)

---

[4] "Stackhouse Decl." refers to the Declaration of Noreen Stackhouse filed on September 1, 2016. (Doc. 31.)

### III. Legal Standard

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and

5

supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## IV. Discussion

### A. *Qualified Immunity*

#### 1. Applicable Law

For § 1983 claims for unconstitutional false arrest in New York, a plaintiff is required to show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause "is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). Likewise, the existence of probable cause is "a complete bar to a claim of malicious prosecution." *Bullard v. City of New York*, 240 F. Supp. 2d 292, 297 (S.D.N.Y. 2003); *see Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (explaining that a plaintiff must demonstrate "lack of probable cause for commencing the proceeding" to prove malicious prosecution, among other things).

"Probable cause exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable

6

caution in the belief that the person to be arrested has committed or is committing a crime," and "depends, in the first instance, on state law." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (internal quotation marks omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ." *Weyant*, 101 F.3d at 852. In determining whether probable cause exists for an arrest, courts consider the "totality of the circumstances in light of the facts known to the arresting officer at the time of the arrest." *Creighton v. City of New York*, No. 12 Civ. 7454 (PGG), 2017 WL 636415, at *25 (S.D.N.Y. Feb. 14, 2017) (citing *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007)). Thus, information learned subsequent to the arrest and any eventual disposition of the criminal charge are irrelevant to the question of whether probable cause existed at the time of the arrest for purposes of the false arrest determination. *See id*.

"Information from a credible eyewitness can . . . be sufficient to establish probable cause." *Jean-Laurent v. Cornelius*, No. 15-cv-2217 (JGK), 2017 WL 933100, at *3 (S.D.N.Y. Mar. 8, 2017); *Creighton*, 2017 WL 636415, at *26 ("It is, of course, 'well-established that a law enforcement official may have probable cause to arrest based on information the officer obtains from some other person, normally the putative victim or eyewitness.'" (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000))). So long as the circumstances do not raise doubt as to the person's veracity, the report of an eyewitness alone can suffice to establish probable cause. *Jean-Laurent*, 2017 WL 933100, at *3.

Further, qualified immunity protects an officer "so long as he had arguable probable cause to arrest, which exists if either (a) it was objectively reasonable for the officer to believe

7

that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Dancy*, 843 F.3d at 107 (internal quotation marks omitted).

## 2. Application

Based upon the undisputed facts, Detective White had, at the minimum, arguable probable cause to arrest Plaintiff for harassment in the second degree, and is thus entitled to qualified immunity. Under New York law, "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." N.Y. Penal Law § 240.26(3). It must involve more than a single, isolated incident. *See People v. Wood*, 59 N.Y.2d 811, 821 (1983).

Here, Detective White received a report from the security guard who was present at the protests outside the residence and reported that he (1) told Plaintiff that he was "not permitted to come onto the stairs, up to the door, or onto any private property surrounding the building," (2) saw, on December 1, 2013, Plaintiff slip an envelope into the mail slot of the building, (3) told Plaintiff not to put anything into the mail slot, (4) read the letter which, he said, included references to Paulson's "beautiful young daughters" and referenced his wife by name, (5) became "alarmed for the safety of the building owner's wife and daughters," (6) observed surveillance video which showed Plaintiff hanging a bag of food items on a door to the property on December 15, 2013, and (7) had observed a different protester, on an earlier occasion, carrying a sign that said "Paulson Digest Our Cyanide." (*See* Crim. Compl. 1–3.) With these facts in mind, it was not unreasonable for Detective White to believe he had probable cause to arrest for harassment in the second degree. *See McIntosh v. City of New York*, No. 17-617, 2018 WL 542583, at *1 (2d Cir. Jan. 25, 2018) (summary order) (upholding summary judgment ruling

8

based on finding that officers had probable cause to arrest plaintiff for harassment in the second degree sufficient to defeat false arrest claim); *Jaegly*, 439 F.3d at 153 (concluding that no reasonable jury could find that officer lacked probable cause to arrest for harassment in the second degree where complainant reported that arrestee, who had previously threatened to "pound on" complainant, was taking pictures of complainant's truck and front door); *Holloway v. Joseph*, No. 10-CV-6470P, 2013 WL 3816534, at *4 (W.D.N.Y. July 22, 2013) (concluding that officer had probable cause to arrest for harassment in the second degree where arrestee had been reportedly driving by complainant's home and threw a bottle at the house). While the totality of the circumstances certainly includes Plaintiff's legitimate, First Amendment-protected activity, it was not unreasonable for Detective White to believe that Plaintiff's actions were sufficiently separate from the lawful protests such that they "serve[d] no legitimate purpose" and instead reflected an "intent to harass, annoy or alarm." N.Y. Penal Law § 240.26(3).

Plaintiff argues that probable cause was absent because Detective White relied on information provided by Paulson's security guard, rather than the actual victim, Paulson, himself. (Pl.'s Opp. 6.)[5] However, there is no requirement that an officer must receive his information from the purported victim himself to establish probable cause.[6] *See, e.g.*, *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 30 (E.D.N.Y. 2015) ("[E]ven in the absence of a statement from the victim, police officer defendants could establish probable cause solely based on information from an eyewitness . . . unless circumstances exists that raise doubts as to the eyewitness's veracity."

---

[5] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. (Doc. 34.)

[6] Furthermore, I find here that Detective White is entitled to qualified immunity based on arguable probable cause, "which exists if . . . officers of reasonable competence could disagree on whether the probable cause test was met." *Dancy*, 843 F.3d at 107 (internal quotation marks omitted). To the extent that Plaintiff argues that probable cause in fact was absent for an arrest under § 240.26(3) because Detective White did not rely on a complaining victim, I need not reach this question to find that Detective White was entitled to qualified immunity. *See Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (explaining that, under qualified immunity analysis, determining whether there was actual probable cause to arrest is unnecessary when arguable probable cause exists).

9

(internal quotation marks omitted)); *Bullard*, 240 F. Supp. 2d at 298 ("Probable cause can also be established by information from an eye witness who it seems reasonable to believe is telling the truth." (internal quotation marks omitted)). This is especially applicable to the facts here, where the victim was not present for the relevant incidents.

Plaintiff also argues that the information provided by Hall was "no more than a hearsay statement from the alleged victim's employee," which required Detective White to make further inquiry. (Pl's Opp. 7.) As an initial matter, Hall's statements regarding Paulson's state of mind are not being offered for the truth of the matter asserted—*i.e.*, that Paulson was in fact fearful for his safety and for the safety of his family—but rather to determine whether the information Detective White had at the time he arrested Plaintiff establishes probable cause or arguable probable cause. *See Marin v. City of New York,* No. 04-CV-3194 (NG)(JMA), 2006 WL 2167082, at *5 (E.D.N.Y. Aug. 1, 2006) ("[B]ecause the statements are offered to show the information [the detective] had when he arrested [the plaintiff], they are not inadmissible hearsay . . . ."). Moreover, Hall reported on multiple days of the protest during which he directly observed as an eyewitness to Plaintiff's behavior. For example, Hall reported that he saw Plaintiff approach the mail slot and push an envelope through, and that he observed Plaintiff "on multiple dates between September 29, 2013 and December 8, 2013," and that on occasion he saw Plaintiff in a group of protesters where one of the protesters was holding a sign that read "PAULSON DIGEST OUR CYANIDE." (Crim. Compl. 3.) Courts have consistently held that "identification by an eyewitness alone can suffice to establish probable cause, in the absence of any reason to believe that person is not telling the truth." *Dunkelberger v. Dunkelberger*, No. 14-CV-3877 (KMK), 2015 WL 5730605, at *9 (S.D.N.Y. Sept. 30, 2015); *see also Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("[P]robable cause exists if a law enforcement officer

'received information from some person, normally the putative victim *or* eyewitness, unless the circumstances raise doubt as to the person's veracity.'" (emphasis added) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d. Cir. 2006))). The fact that Hall was an employee of the victim makes him no less of an eyewitness.

To the extent Plaintiff argues that Detective White had reason to question Hall's veracity on the basis that Hall and the victim were biased against Plaintiff because of the political activity, there is nothing in the record to indicate that Detective White should have suspected that Hall was not being truthful. Indeed, Hall's report to the police gave a thorough and unvarnished account of Plaintiff's behavior. Therefore, under the circumstances here, it was not unreasonable for Detective White to forego further investigation before arresting Plaintiff. *See Finigan v. Marshall*, 574 F.3d 57 (2d Cir. 2009) ("[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." (quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)).

Because I find that Detective White is entitled to qualified immunity on the basis that it was reasonable to arrest Plaintiff for violating § 240.26(3), I need not decide whether probable cause in fact existed for an arrest under § 240.26(3) or for any of the other crimes for which Plaintiff was arrested. *See Zalaski*, 723 F.3d 382 at 390 (explaining that, under qualified immunity analysis, determining whether there was actual probable cause to arrest is unnecessary when arguable probable cause exists); *Salvador v. City of New York*, No. 15cv5164(DLC), 2016 WL 2939166, at *6 (S.D.N.Y. May 19, 2016) ("[P]robable cause need only exist for *an* offense,

not all of the offenses charged or even any of the specific offenses invoked at the time of the arrest.").

## V.     Conclusion

For the foregoing reasons, Defendant's motion for summary judgment, (Doc. 29), is GRANTED, and Plaintiff's claims are DISMISSED. The Clerk of Court is respectfully directed to enter judgment for Defendant and close this case.

SO ORDERED.

Dated:     March 28, 2018
              New York, New York

_____
Vernon S. Broderick
United States District Judge